Filed 1/5/22  In re Kamila E. CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re KAMILA E., a Person Coming Under the Juvenile Court Law. | B310869, B312081 (Los Angeles County Super. Ct. No. 20CCJP00610B) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> ALFREDO E., <br><br> Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Lisa A. Brackelmanns, Juvenile Court Referee. Affirmed.

John L. Dodd, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Sarah Vesecky, Deputy County Counsel, for Plaintiff and Respondent.

* * * * * *

Appellant Alfredo E. (father) appeals from the juvenile court's orders assuming jurisdiction over his daughter Kamila (born 2014) and removing her from his custody. Father also challenges the juvenile court's order terminating jurisdiction, granting Maribel M. (mother)[1] sole physical custody of Kamila, both parents joint legal custody and according father six hours of weekly monitored visits.

We affirm the juvenile court's orders.

## BACKGROUND
**Detention and Welfare & Institutions Code section 300 petition**

On January 8, 2020, the Los Angeles County Department of Children and Family Services (the Department) received a referral alleging that half-sibling Justin (born 2008)[2] reported that father touched him inappropriately on his buttocks and genital area and had done so for many years. Justin had disclosed the inappropriate touching to mother the previous week.

Mother told the responding social worker that Justin and Kamila live with her. Father did not live in the home but visited

---

[1]     Mother is not a party to this appeal.

[2]     Justin is not a subject of this appeal.

2

with the children every Saturday and on occasional weekdays. The parents ended their relationship three years earlier.

Mother said that Justin's biological father had no contact with them since Justin's birth and his whereabouts were unknown. Justin believed father was his biological father, but father was Kamila's biological father only. Neither child was the subject of a family law custody order.

Mother said that Justin was quiet and appeared sad when father visited the home on December 28, 2019. After father left, Justin told mother he did not want father to come to the home anymore. He said father put his hand under Justin's shorts and squeezed his buttocks. Mother responded that she could not stop father from coming to the home because he helped pay the rent. She said she would speak with father and tell him to stop touching Justin. When confronted father said he was only being affectionate but that he would stop touching the child.

Mother told the social worker that she had learned only the previous day that father was touching Justin's buttocks and genitals under the child's underwear. Justin's therapist told mother that the child had disclosed the inappropriate touching. Justin had been receiving therapy for five months because he was unusually quiet and appeared to be sad.

The social worker spoke separately and privately with Justin at his school. Justin referred to father as "my dad" throughout the interview. He said father had not lived with the family for several years but visited every Saturday. He felt uncomfortable in father's presence because "[h]e touches my butt between my underwear and my skin . . . ." Justin reported that father had been touching his buttocks this way for many years

3

and that father did so when mother was not looking. He had not seen father touch Kamila in this manner.

Justin reported that during a recent visit with father he was sitting on the bed and father was lying down facing him. Justin told father he was feeling sad, father asked him why, and then father "squeezed my middle part inside my underwear." Justin clarified that his "middle part" were his genitals. He asked father to stop and father complied, but Justin was afraid that father would continue to touch him. Justin reported the incident to mother, who responded that the family needed father's financial support. Justin said he had not seen father since disclosing the incident to mother. When the social worker told Justin she would be speaking with father, Justin replied, "I think my dad is going to lie to you."

The social worker also interviewed Kamila separately and privately at the child's school. Kamila denied seeing father touch Justin inappropriately and denied that anyone touched her inappropriately.

Father told the social worker during a January 10, 2020 interview that he was Kamila's biological father and that he considered Justin to be his own child. Father said he had another child named Geovani, age 12, whom he visited every two months.

Father said mother is usually present during his Saturday visits with Justin and Kamila. He adamantly denied touching Justin's buttocks or genitals. He suggested that Justin's disclosures may have been prompted by a recent incident in which father scolded Justin for using father's credit card. Father signed a safety plan stating he would have no contact with the children for seven days.

Justin's therapist told the social worker that Justin had been diagnosed with an anxiety disorder and had been attending weekly therapy sessions since July 2019. Justin told the therapist on January 8, 2020, that father put his hand on Justin's buttocks and genitals, under the child's clothing.

The Department filed a petition on behalf of Justin and Kamila on January 31, 2020, alleging under Welfare and Institutions Code[3] section 300, subdivisions (b), (d), and (j), that father sexually abused Justin by touching the child's buttocks, penis, and testicles, that mother knew or reasonably should have known of the abuse and failed to protect the children, placing them at risk of serious physical harm. The petition further alleged that father's sexual abuse of Justin placed Kamila at risk of harm.

Both parents were present at the February 3, 2020 detention hearing at which the juvenile court ordered Kamila detained from father and released to mother. The court granted father six hours of monitored visits per week and specified that mother was not to monitor the visits. The court also granted mother a temporary restraining order against father.

**Jurisdiction/disposition**

The Department's March 27, 2020 jurisdiction/disposition report contained a summary of Justin's statements during a February 27, 2020 forensic interview. Justin confirmed that father touched his genitals and buttocks while they were on a bed in the home. He said that father had touched his buttocks in the past but could not remember when father first began doing so.

---

[3] All further statutory references are to the Welfare and Institutions Code.

5

During a March 2, 2020 interview with the social worker, mother recounted an incident that occurred when Justin was 10 years old. Justin was getting dressed after showering when father told him, "you are getting older," and "your penis is going to grow." Justin did not respond but covered himself up. Mother recalled another incident when Justin was using father's cell phone to play a game in the car while father was driving the family. Justin tapped mother to show her that father had a pornographic image on his phone.

In a March 5, 2020 interview, father again denied touching Justin's genitals or buttocks. He said he would give Justin a spank on his bottom over his clothing as an expression of affection when saying goodbye. Father admitted commenting once on Justin's physical development when Justin was coming out of the shower. Father had said, "look at your penis." Father also admitted looking at pornography but said he did not know what Justin had seen on father's phone.

The Department recommended that the children remain in mother's care and that father receive family reunification services. The adjudication hearing was continued several times because of COVID-19 concerns.

**Last minute information reports and review reports**

The Department reported in a last minute information for the court filed on May 1, 2020 that father had stopped providing mother with financial assistance. The social worker monitored a video call between father and Kamila on March 16, 2020. Father was appropriate and no concerns were noted.

In a July 27, 2020 interim review report, the Department reported that mother was participating in weekly individual counseling. She was awaiting processing in a parenting program

6

but had not yet enrolled in a sexual abuse awareness program. The temporary restraining order against father had been renewed twice but had since lapsed.

Father had not enrolled in any services. He had not participated in in-person visits with Kamila because of COVID-19 concerns. He telephoned mother for updates on the child and arranged with the social worker to have a virtual visit with Kamila the following week.

In a November 2020 last minute information for the court, the Department reported that mother continued to participate in individual therapy, including therapy to address sexual abuse awareness. Mother was also participating in a 20-session parenting program that she was expected to complete soon. Mother also recently began working a few days a week.

Father had not enrolled in any services. The social worker monitored a one-and-a-half-hour, in-person visit between father and Kamila at an outdoor picnic area on November 2, 2020. Father was appropriate and affectionate.

The Department recommended that Kamila and Justin be declared dependent children and that jurisdiction be terminated and mother granted sole physical custody of the children.

**Adjudication and disposition**

At the adjudication hearing held on January 28, 2021, the juvenile court received into evidence the Department's reports. The court then amended the section 300 petition by interlineation to state that father had "inappropriate sexual contact" with Justin by squeezing and touching the child's buttocks, penis, and testicles. The court struck the section 300, subdivision (d) allegations and sustained the petition as amended, under subdivisions (b) and (j).

The juvenile court then proceeded to disposition and ordered Kamila removed from father and continued in mother's home.  The court's minute order states in part:

> "The Court finds by clear and convincing evidence, pursuant to . . . sections 361(a)(1), 361(c), 361(d) and 362(a), and additionally applying to noncustodial parent(s)/legal guardian(s) the constitutional and statutory safeguards available to custodial parents.

> "It is reasonable and necessary to remove the child from the father . . . because there is a substantial danger to the physical health, safety, protection, or physical or emotional well-being, and special needs, if applicable, of the child, and there are no reasonable means by which the child's physical health can be protected, without removing the child from the home and the care, custody, and control of that or those parent(s)/legal guardian(s).

> "The Court further finds that it would be detrimental to the safety, protection, or physical or emotional well-being, and special needs, if applicable, of the child to be returned to or placed in the home or the care, custody, and control of that or those parent(s)/legal guardian(s).

> "The Department . . . made reasonable efforts to prevent removal but there are no services available to prevent further detention."

The juvenile court then terminated jurisdiction with a family law order granting mother sole physical custody of Kamila and both parents joint legal custody.  The court stayed the order terminating jurisdiction pending receipt of the custody order. Father was accorded monitored visits for a minimum of six hours per week.

8

Counsel for all parties were present at the March 22, 2021 hearing at which the juvenile court signed and filed the custody order. Before signing the order, the juvenile court asked whether there were any objections to the court signing the custody order. There was no objection, and the juvenile court signed the order.

This appeal followed.

## CONTENTIONS ON APPEAL

Father raises the following contentions on appeal:

1. There was no substantial evidence supporting jurisdiction at the time of the adjudication hearing.

2. The removal order must be vacated because the juvenile court failed to make the required findings under section 361, subdivision (d), and because substantial evidence did not support removal.

3. The custody order must be vacated because the juvenile court failed to make the findings required by California Rules of Court, rule 5.695(a)(7)(A).

## DISCUSSION

### I.    Jurisdiction

Section 300, subdivision (b)(1), authorizes a court to assume dependency jurisdiction over a child if "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child." The statute further provides that "[t]he child shall continue to be a dependent child pursuant to this subdivision only so long as is necessary to protect the child from

risk of suffering serious physical harm or illness." (§ 300, subd. (b)(1).)

A court may also assert dependency jurisdiction over a child under section 300, subdivision (j) when "[t]he child's sibling has been abused or neglected . . . , and there is a substantial risk that the child will be abused or neglected."

Father does not challenge the factual basis for the juvenile court's jurisdictional findings—that father engaged in inappropriate sexual contact with Justin. Rather, he contends neither Kamila nor Justin was at risk of harm at the time of the jurisdictional hearing.

We review the juvenile court's jurisdictional findings for substantial evidence. (*In re I.J.* (2013) 56 Cal.4th 766, 773.) In doing so, ""'we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court.'"" (*Ibid.*)

There was substantial evidence of a continuing risk of harm to Kamila. Father's inappropriate sexual contact with Justin continued over a period of years and included touching Justin's buttocks and genitals under the child's clothing. The inappropriate sexual contact occurred in the home where Kamila and Justin both lived. Father repeatedly denied or minimized his inappropriate conduct. He suggested that Justin fabricated the disclosures after being disciplined by father. Finally, father failed to participate in any services.

That father and mother no longer lived together and had not done so for years did not alleviate the ongoing risk. Father's

sexual contact with Justin continued after the parents separated and father no longer lived in the home.

The absence of evidence of inappropriate sexual contact between father and Kamila does not defeat jurisdiction. A child need not suffer actual harm before a juvenile court may intervene. (*In re Leticia S.* (2001) 92 Cal.App.4th 378, 383, fn. 3.) The grounds for assuming jurisdiction over a child under section 300, subdivision (j), moreover, are very broad. "'[S]ubdivision (j) was intended to expand the grounds for the exercise of jurisdiction as to children whose sibling has been abused or neglected as defined in section 300, subdivision (a), (b), (d), (e), or (i). Subdivision (j) *does not* state that its application is limited to the risk that the child will be abused or neglected *as defined in the same subdivision* that describes the abuse or neglect of the sibling.'" (*In re I.J., supra*, 56 Cal.4th at p. 774.)

Contrary to father's assertion, the temporary restraining order mother obtained against father in January 2020 did not eliminate the risk of harm. The record indicates that the restraining order lapsed on May 27, 2020. There is no evidence that a restraining order was in effect at the time of the January 28, 2021 jurisdiction hearing. That the juvenile court could have issued a three-year restraining order against father under section 213.5, subdivision (d), instead of assuming jurisdiction over Kamila neither alleviates nor negates the risk of harm to Kamila at the time of the adjudication hearing.

Substantial evidence supports the juvenile court's jurisdictional order.

## II.   Removal order
### A.   *Applicable law and standard of review*

Section 361, subdivision (d) states in relevant part:  "A dependent child shall not be taken from the physical custody of his or her parents . . . with whom the child did not reside at the time the petition was initiated, unless the juvenile court finds clear and convincing evidence that there would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the child for the parent . . . to live with the child or otherwise exercise the parent's . . . right to physical custody, and there are no reasonable means by which the child's physical and emotional health can be protected without removing the child from the child's parent's . . . physical custody."

Section 361, subdivision (e) provides:  "The court shall state the facts on which the decision to remove the minor is based."

In *Conservatorship of O.B.* (2020) 9 Cal.5th 989 our Supreme Court set forth the standard of review applicable when reviewing the sufficiency of the evidence in support of a finding that requires clear and convincing proof:  "[A]ppellate review of the sufficiency of the evidence in support of a finding requiring clear and convincing proof must account for the level of confidence this standard demands.  [W]hen reviewing a finding that a fact has been proved by clear and convincing evidence, the question before the appellate court is whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true. Consistent with well-established principles governing review for sufficiency of the evidence, in making this assessment the appellate court must view the record in the light most favorable to the prevailing party below and give due deference to how the

12

trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence." (*Id.* at pp. 995-996.) Although *O.B.* is a conservatorship case and not a dependency case, the standard of review set forth therein is controlling in dependency cases as well. (*In re V.L.* (2020) 54 Cal.App.5th 147, 155; see *O.B.*, at p. 999.)

**B.** **Substantial evidence supports the removal order**

Substantial evidence supports the removal order. Father's inappropriate sexual contact with Justin, including squeezing Justin's buttocks and genitals under the child's clothing, supports the order removing Kamila from him. Father's sexual contact with Justin, who lived in the same home as Kamila, occurred over a period of years and continued after father no longer lived in the family home; father repeatedly denied or minimized his conduct; and father refused to participate in any services to address the case issues.

**C.** **Failure to state facts harmless**

Because substantial evidence supports the removal order, the juvenile court's failure to state the specific facts it relied upon in issuing that order was harmless. (*In re V.L., supra*, 54 Cal.App.5th at p. 159.) An appellate court will not reverse an order unless it concludes that it is reasonably probable that a result more favorable to the appealing party would have been reached absent such error. (*Ibid.*) Here, it is not reasonably probable that the juvenile court would have reached a different result had it stated the pertinent facts.

We reject father's argument that he suffered prejudice because the court's purportedly erroneous removal order "starts the clock running on reunification efforts," which could lead to

13

termination of parental rights.  The juvenile court here terminated jurisdiction and issued a custody order.  No reunification clock was running, and termination of father's parental rights was not at issue.

## III.   Custody order

Father's sole basis for challenging the custody order is that he was prejudiced by the juvenile courts' failure to state the factual basis for that order under California Rules of Court, rule 5.695(a)(7)(A).  That rule states:  "At the disposition hearing, the court may . . .  [¶]  [d]eclare dependency, remove physical custody from the parent or guardian, and . . .  [¶]  [a]fter stating on the record or in writing the factual basis for the order, order custody to a noncustodial parent, terminate jurisdiction, and direct that *Custody Order* (form JV-200) be prepared and filed under rule 5.700."  (Cal. Rules of Court, rule 5.695(a)(7)(A).)  Father claims there is a reasonable probability that he would have received more than six hours of weekly visits with Kamila had the juvenile court made specific findings pursuant to that rule.

Father never argued that he should receive more than six hours of visitation, nor did he object when the juvenile court specifically asked whether the parties had any objection to the court's custody order.  There is no basis for concluding that father would have been accorded more visitation hours if the juvenile court had made specific findings as the basis for issuing the custody order.

## DISPOSITION

We affirm the juvenile court's orders establishing jurisdiction over Kamila, removing her from father's custody, and

14

terminating jurisdiction and granting mother sole physical custody and both parents joint legal custody over Kamila.

_____
CHAVEZ, J.

We concur:

_____
ASHMANN-GERST, Acting P. J.

_____
HOFFSTADT, J.